# United States District Court
## District of New Jersey

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Patty Shwartz |
| v. | : | Magistrate No. 12-3126 |
| LEONARD "Lenny" STEFANELLI | : | **CRIMINAL COMPLAINT** |

I, James E. Fitzpatrick, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief.

SEE ATTACHMENT A

I further state that I am a Special Agent with the Drug Enforcement Administration and that this complaint is based on the following facts:

SEE ATTACHMENT B

James E. Fitzpatrick,
Special Agent
Drug Enforcement Administration

Sworn to before me and subscribed in my presence,

September 7, 2012         at      Newark, New Jersey
Date                                City and State

Honorable Patty Shwartz
United States Magistrate Judge

1

ATTACHMENT A

On or about February 8, 2012, in Essex County, in the District of New Jersey and elsewhere, defendant:

LEONARD "LENNY" STEFANELLI

did knowingly and intentionally dispense and possess with intent to dispense a mixture or substance containing a detectable amount of oxycodone, a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

ATTACHMENT B

I, James E. Fitzpatrick, am a Special Agent with the Drug Enforcement Administration ("DEA"). I have knowledge about the facts set forth below from my involvement in the investigation, review of reports and documents, and discussions with other law enforcement officials. Where statements of others are related herein, they are related in substance and part. Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

1. At all times relevant to this Complaint, LEONARD "LENNY" STEFANELLI was the part-owner and pharmacist-in-charge of West Orange Pharmacy, Inc. ("West Orange Pharmacy"), located at 443 West Main Street, West Orange, NJ.

2. West Orange Pharmacy is registered with the DEA as a retail pharmacy, allowed to dispense, *inter alia*, certain "controlled substances" as defined by the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* The Controlled Substances Act, and the Code of Federal Regulations ("CFR") govern the manufacture, distribution and dispensation of controlled substances.

3. The term "controlled substance" means a drug or other substance, or immediate precursor, included in Schedule I, II, III, IV or V, as designated by Title 21, United States Code, Section 802, and the CFR. The assignment of a controlled substance to Schedule II means that the drug or other substance has a high potential for abuse, a currently accepted medical use with severe restrictions, and abuse of the drug or other substance may lead to severe psychological or physical dependence. 21 U.S.C. § 812. Accordingly, the law permits pharmacists to dispense Schedule II controlled substances only when presented with a written prescription from a practitioner. *See* 21 U.S.C. § 829(a).

4. Oxycontin is a prescription drug manufactured by Purdue Pharma. The drug's active ingredient is oxycodone, a Schedule II controlled substance. Oxycodone is a synthetic opiate possessing approximately twice the potency of morphine, prescribed for the treatment of moderate to severe pain. Oxycontin is designed to provide a controlled-release delivery of oxycodone. In order to bypass the controlled-release feature, however, abusers of Oxycontin often crush and snort, or dissolve and inject, the tablets.

5. From at least on or about February 1, 2012, through on or about August 6, 2012, on six separate occasions, STEFANELLI knowingly and intentionally dispensed oxycontin to a confidential source ("CS") without a prescription, in exchange for cash.

6. For example, on or about February 8, 2012, a CS entered West Orange Pharmacy and handed $1,800 to STEFANELLI, in exchange for one bottle of 100-count Oxycontin 30-mg tablets and one bottle of 100-count Oxycontin 15-mg tablets. The CS did not have a prescription, nor did STEFANELLI ask him for one.

7. The tablets sold by STEFANELLI to the CS on February 8, 2012 tested positive for oxycodone.